UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TAWHID HASSAN (A-Number: 226-069-492),<br><br>                    Petitioner,<br><br>          v.<br><br>PAMELA BONDI, *et al.*,<br><br>                    Respondents. | Case No.  1:26-cv-1860-DC-JDP<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Tawhid Hassan entered the United States after inspection in 2024 and was arrested and re-detained by ICE in 2026.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention violates the Fifth Amendment.  For the reasons outlined below, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

On May 28, 2024, petitioner entered the United States, after coming from Bangladesh.  ECF No. 1-2 at 2.  That same day, after inspection by the Department of Homeland Security ("DHS"), petitioner was issued a Notice to Appear and released on his own recognizance.  *Id*.  Petitioner has a pending asylum case.  ECF No. 1 at 5.  There is no evidence that, between his release and re-detention, petitioner violated any requirements imposed by DHS .

Sometime in late January or early February 2026, petitioner was arrested and re-detained by ICE.  *See id*. at 2 (stating that petitioner "has been detained for approximately 1 month").

1

Petitioner has been in custody since, and he has not been provided a bond hearing. *Id*.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his re-detention violates his Fifth Amendment Due Process rights.[1] ECF No. 1 at 8-10. Notably, respondents offer no response to petitioner's due process claim. Instead, they address only petitioner's statutory claim and advance an argument premised on the assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). ECF No. 5 at 1-2. In asserting this statutory argument, respondents rely primarily on out-of-circuit authority and concede that "most of the Courts in the Eastern District of California have ruled in favor of Petitioner's arguments." *See id.* at 1-2. Respondents do not explain what, if any, alternative grounds support their statutory position. More fundamentally, respondents' focus is misplaced, because they do not address petitioner's due process claim.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate

---

[1] Because the petition should be granted on the basis of petitioner's due process claim alone, I find it unnecessary to address petitioner's claim alleging that his re-detention violates the Immigration and Nationality Act. *See* ECF No. 1 at 6-8.

2

what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that

3

petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in 2024. ECF No. 1-2 at 2; *see also* ECF No. 5 at 2 (respondents acknowledging "Petitioner's prior release in the discretion of DHS"). Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over a year. During that time, he has formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Prior to his re-detention, petitioner had been released in the United States under the supervision of ICE for over a year. During that time, he applied for asylum. ECF No. 1 at 5; *see also Noori v.*

4

*LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high. Petitioner was released on his own recognizance after inspection at the border. Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-detention; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See id*. Respondents also provide no evidence indicating that petitioner is a danger to the community or a flight risk. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a

hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide a pre-deprivation bond hearing. *See* ECF No. 5. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner requests that he be released or, in the alternative, be provided a bond hearing. ECF No. 1 at 10. Respondents do not address this issue. *See* ECF No. 5.

Under the circumstances presented, I find that "immediate release is warranted to return to the status quo ante and remedy a constitutional violation." *See Pineda v. Chestnut*, No. 1:25-cv-1970-DC-AC, 2026 WL 25510, at *7 (E.D. Cal. Jan. 5, 2026). As noted, there is no evidence indicating that petitioner is a danger to the community or a flight risk. As such, "the government's interest in detaining [him] without proper process is slight." *See J.S.H.M v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *16 (E.D. Cal. Oct. 16, 2025).

Indeed, "the only potential injury that the government faces is a short delay in detaining [petitioner] if it ultimately demonstrates to a neutral decisionmaker that [his] detention is necessary to prevent flight or danger to the community." *See Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 941 (N.D. Cal. 2025) (internal quotation marks and citation omitted). As this court has held previously, "[r]espondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating [p]etitioner's due process rights, which is the case here." *See Pineda*, 2026 WL 25510, at *6 (citing *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)).

**Conclusion**

Based on the foregoing, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

6

2. Respondents be ordered to immediately release petitioner (A-Number: 226-069-492) from their custody.  Respondents shall not impose any additional restriction on him unless it is determined to be necessary at a future pre-deprivation/ custody hearing.  If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before an immigration judge at which the government shall bear the burden of justifying petitioner's detention by clear and convincing evidence.  This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    March 31, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE